THE METHODIST PROTESTANT CHURCH OF CINCINNATI v. HARRY L. LAWS AND FLORENCE E. LAWS.

1. FACTS WHICH DO NOT BAR PLAINTIFF FROM MAINTAINING HIS PRESENT ACTION.

    Upon the facts as stated by the court in its opinion in this case, it was held that the pendency of the proceeding in error in the supreme court to reverse the judgment in a former case, did not bar the plaintiff from bringing and maining this action, if the evidence otherwise shows that he is entitled to the relief sought.

2. MATTERS SETTLED AND ADJUDICATED IN FORMER CASE BETWEEN SAME PARTIES—EFFECT.

    That the matters set up in the second defense, even if there was evidence to maintain them, (which was not offered), had already been settled and adjudicated in the former case between the same parties.

3. OBSTRUCTING PLAINTIFF'S RIGHT OF WAY.

    That the structure erected by the defendant over the roadway of plaintiff is in violation of the right of said plaintiff, and ought not to be maintained as it now is.

HEARD ON APPEAL.

SMITH, J.

After the entry of the final decree rendered by this court in another cause then pending therein between these same parties, and in regard to the same roadway, and the respective rights of the parties therein, a proceeding in error was filed in the supreme court of Ohio to reverse our judgment. While this proceeding in error was pending in that court the present action was begun in the court of common pleas, and is now here on appeal from the decree entered in that court. The opinion announced by the circuit court in the first case will be found in 4 C. D., 562, and the judgment rendered has recently been affirmed by the supreme court, without further report. In the opinion referred to, the nature of the controversy between the parties there adjudicated and the conclusions reached by the court are fully set out, and it is therefore unnecessary to state them here, and the judgment of the court having been affirmed, we must accept that judgment as to the rights of the parties as to the matters involved therein, as correct and final.

The petition in the case now before us, sets out substantially the allegations of the petition in the other case as to the roadway and the rights of the plaintiff thereto, and the ownership by the defendants of

*For previous decision in this case, see 4 Circ. Dec., 562, which was affirmed by Supreme Court in 55 O. S., 662; unreported.

the real estate immediately east of and adjoining the land owned by plaintiff, subject to said roadway through the same, and then avers that such defendants without any right to do so, are threatening, and proceeding to obstruct said roadway and right of way, by placing the foundations of a stable which they are erecting out in said roadway about six feet, and are carrying the same to a considerable distance above the grade of said road and arching the same over said road in such a manner as will permanently injure and interfere with the use of said roadway by the plaintiff and others entitled thereto, and the prayer was that the defendants be enjoined from in any way obstructing said road, or permitting or maintaining any obstruction therein. A temporary restraining order was also asked for. The answer sets up three defenses.

First.—The pendency in the supreme court of the former suit on error, and the refusal of the supreme court to grant a temporary injunction against the maintenance of a *gate* at the west end of the roadway.

Second.—That Mrs. Laws is the owner of the real estate east of, and adjoining that of plaintiff, (particularly described,) and that the right of way referred to lies on the north end of her real estate. It then sets up that plaintiff's real estate was acquired solely for use as a cemetery, and was so used until a few years ago, and that the right of way referred to, during all that time, has been used simply as an entrance to the cemetery for persons having lawful right to enter therein, and was granted for no other purpose. That there has always been a gate at the west end of the right of way at the entrance of said cemetery, between posts, about eight feet apart. It then sets up the agreement recited in the opinion of the circuit court referred to, and what was done under it, and the decree of the court in the former case. It further avers that about — the plaintiffs subdivided the cemetery ground into lots for residence and building purposes, and has opened and dedicated public streets through the same, running north and south, connecting with another street running east and west, having its eastern terminus at the west end of said right of way over the defendants, premises and both connecting with other streets running through populous parts of the city, so that said right of way over the premises of the defendants can no longer be used for the purposes for which it was granted, but if at all, only as an entrance for the public generally to said public highway, by reason whereof said easement and right of way have been lost and ceased—and inasmuch as it can no longer be used for the purpose for which it was granted, nor otherwise that an entrance for the public generally to said public streets, the defendants pray that the easement may be declared abandoned, lost and at an end.

Third.—They deny that they are threatening and proceeding to obstruct said road by carrying the foundations of their stable which they are building on the rear of their premises, out into said roadway about six feet, and carrying the same a considerable distance above the grade of said road, and arching the same over said road in such manner as will permanently injure and interfere with the use of said roadway by the plaintiffs and those entitled thereto. The distance between the posts occupied by the gate at the west end of said roadway, has never been greater than eight feet. If plaintiff ever had any right to a larger entrance to its property, it has been lost or abandoned. The defendants have left an entrance way of nine feet, and the arches of defendants stable are sufficiently high to enable plaintiff a passage way from said roadway onto its property.

The reply denies the averment of new matter in the answer.

The evidence shows this state of fact. That while the proceeding in error was pending in the supreme court, the defendants against the written protest and remonstrance of the plaintiff, after removing the fence, and the gate which were the subjects of the former litigation, began to build, and finally completed, (no injunction having been granted in this case,) a substantial structure upon, and over the roadway at the west end thereof. It had stone walls on the east and west sides. The part of the building which stood upon and over this roadway was thirty feet north and south and twenty-seven feet ten inches east and west. Connected with this structure on the south of it was the stable of the defendants, there being a wall on the north end of the stable, with a large doorway from what was, or had been the roadway. In each of the east and west walls, and about the center thereof was a heavy wooden door nine feet wide, and nine feet eight inches high. They were sliding doors, and each was fastened by a spring lock, to open which from the outside a key that fitted the lock was necessary, but from the inside the doors when locked, could be opened without a key. There was a window on each side of the doors spoken of, near the top of the wall. On these walls the roof of the structure rested, and the ceiling of the room thus formed over the roadway was eleven feet from the ground, which was a heavy concrete floor. This space of thirty feet by twenty-seven feet ten inches has since the construction of the building, been substantially used by the defendants, as if it was their own private property, the gates having been kept shut and locked, except when they saw proper to open them for their own purpose and the plaintiff, and so far as appears, no other person entitled to use this roadway to, the said cemetery land, has ever used it, though it appears that when the structure was completed, the attorney of the defendant sent to the attorney of the plaintiff, a key that would open the locks on both doors. The part of the roadway thus enclosed, has from the time of its erection, been used as a place to store two of the three vehicles owned by the defendants, and for other things that they desired to keep there, but Mr. Laws testifies that there has always been left vacant a sufficient passage for vehicles. But practically, as we understand it has been used exclusively by the defendants, although the street laid out through the old cemetery ground comes right up to the west door of this structure, and there is nothing to indicate that any person has a right to open the doors and use the roadway, but all appearances would be to the contrary, and that there was no way there, and that the structure was private property. Before it was erected, there was simply a gate in the paling line fence, about seven feet high ; and over and through which a full view of this roadway could be had.

Whether the doors or the arch over them are of a sufficient height to allow free and unobstructed travel, and the passage of vehicles is not clear from the evidence adduced. They certainly are sufficient to allow *any ordinary* vehicles to pass freely. But whether they are of sufficient height to allow for instance furniture vans, such as are in common use, or loaded hay wagons does not clearly appear. We incline to the opinion, judging from our own observation, that they are not.

On this state of facts we are of the opinion :

First.—That the pendency of the proceeding in error in the supreme court, to reverse the judgment in the former case, did not bar the plain-

tiff from bringing and maintaining this action, if the evidence otherwise shows that it is entitled to the relief sought.

Second.—That the matters set up in the second defense, even if there was evidence to maintain them, (which was not offered), had already been settled and adjudicated in the other case.

Third.—That the structure erected by the defendant over this roadway is in violation of the rights of the plaintiff, and ought not to be maintained as it now is. It is certainly a different arrangement than could ever have been contemplated by the original grantor and grantee, or from that stipulated for in the subsequent contract between them; and under which defendant's grantor was authorized to and did maintain a gate in the fence on the line between them, and as was held by this court in settling the rights of the parties in the former case, to keep it locked, for the purpose of keeping those who were not entitled to use it, from doing so, as under the circumstances disclosed it seemed necessary to do, but not thus wrongfully to interfere with its use by those entitled to use it. This, of course, would require the defendants to furnish proper and reasonable facilities to those having such rights to enjoy them.

Before the erection of this structure the way was a visible one, and practically open to those having the right to use it. Now the burden to them is greatly increased. Another wall with a similar doorway thereon has been placed across the roadway, twenty-seven feet from the first, for the sole purpose, we imagine, of making the use of the roadway more difficult and burdensome to those held to be entitled to use it, and by the form of the construction thereof to deter them from such use, and of converting that part of the roadway covered and enclosed by this structure to the private use of the defendants.

We think that this is unauthorized, and should not be sustained by the court. Exactly what relief should be granted is a question of doubt and difficulty. It would seem harsh, and perhaps unnecessary to compel the defendants to remove the whole of this structure from the roadway. We are of the opinion that the substantial rights of the parties entitled to the use of the roadway can be protected and preserved without doing so. But we hold that the erection and maintenance of the east gateway, at least, should be enjoined, and the use of that part of the roadway within the structure, in the manner in which it has been used by the defendants, or in any manner calculated to infringe upon the rights of the plaintiffs, or those claiming under it, and entitled thereto, in the free enjoyment of that part of the roadway, should cease. In view of the fact that the evidence heard leaves it uncertain whether the west gateway which is to remain, is sufficiently high to allow the passing of large vehicles, we will, if desired, hear additional evidence upon that point, and if it should appear that it is not of sufficient height, will require it to be corrected.

It would follow, too, that if persons, other than the plaintiff, are entitled to the use of this roadway, that the defendants must furnish them keys by which they can unlock the gate, for the purpose of passage over the same.

It has seemed to us, however, that this is a case in which the parties might come to some fair and amicable agreement as to the matters in controversy, while the owners of the property entitled to the use of the

roadway are few in number, and we suggest the propriety of making such an agreement.

*Matthews & Cleveland* and *Archer & Osler*, for Plaintiffs.
*Ramsey, Maxwell & Ramsey, contra.*